UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

David N.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

19-CV-219-LJV
DECISION & ORDER

---

On February 20, 2019, the plaintiff, David N. ("David"), brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On June 15, 2020, David moved for judgment on the pleadings, Docket Item 9; on August 14, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 10; and on September 4, 2020, David replied, Docket Item 11.

For the reasons stated below, this Court denies David's motion and grants the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

**STANDARD OF REVIEW**

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court **must** accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

**DISCUSSION**

**I. ALLEGATIONS**

David argues that the ALJ erred by crafting a mental residual functional capacity ("RFC")[3] unsupported by substantial evidence. Docket Item 9-1 at 1. More specifically, he argues that the ALJ erred by "giv[ing] great weight to [the opinion of Caillean McMahon-Tronetti, D.O.] while conceding it was vague" and by "failing to explain how the opined limitations" in Dr. McMahon-Tronetti's opinion, among others, "related to the

---

[3] A claimant's RFC "is the most [he] can still do despite [his] limitations," 20 C.F.R. § 416.945, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 86–8, 1986 WL 68636, at *8). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

2

[mental] RFC." *See id.* at 8-12. This Court disagrees and accordingly affirms the Commissioner's finding of no disability.

## II. MENTAL RFC

When determining a plaintiff's RFC, an ALJ must evaluate every medical opinion received, "[r]egardless of its source." 20 C.F.R. § 404.1527(c). An ALJ's RFC determination, however, does not need to "perfectly correspond with any of the opinions of medical sources cited in his decision." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Id.*; *see also* 20 C.F.R. § 416.927(d)(2) ("Although [the Commissioner] consider[s] opinions from medical sources on issues such as . . . [the claimant's] residual functional capacity . . . , the final responsibility for deciding these issues is reserved to the Commissioner.").

Although an RFC is unsupported by substantial evidence when it is based on an opinion that is too vague, *see Curry v. Apfel*, 209 F.3d 117, 123–24 (2d Cir. 2000), *superseded by statute on other grounds as recognized in Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (summary order), the use of the term "moderate" does not necessarily make an opinion too vague, *see, e.g.*, *Dier v. Colvin*, 2014 WL 2931400, at *4 (W.D.N.Y. June 27, 2014) (citing *Tudor v. Comm'r of Soc. Sec.*, 2013 WL 4500754, at *12 (E.D.N.Y. Aug. 21, 2013) ("[W]hile the treating physician and consultive examiner used terms like "mild" and "moderate" this does not automatically render their opinions void for vagueness."). And that is particularly true when the opinion is based on clinical findings and examinations. *Dier*, 2014 WL 2931400, at *4.

3

Moreover, with respect to a mental RFC, "[i]t is well settled that a limitation to unskilled work[4] sufficiently accounts for moderate limitations in work-related functioning." *Washburn v. Colvin*, 286 F. Supp. 3d 561, 566 (W.D.N.Y. 2017); *see, e.g.*, *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (holding that the ALJ's decision that the plaintiff could perform past, unskilled work was supported by substantial evidence where "[n]one of the clinicians . . . indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations"); *Whipple v. Astrue*, 479 Fed.Appx. 367, 370 (2d Cir. 2012) (holding that an RFC to "perform[] work that 'involved simple tasks and allowed for a low-stress environment'" was supported by substantial evidence where consultative examiners concluded that the plaintiff "was only mildly and moderately impaired by his depression and anxiety"); *Saxon v. Colvin*, 2015 WL 3937206, at *6 (W.D.N.Y. 2015) (holding that the plaintiff's "moderate limitation[s] in the ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress," were sufficiently accommodated by an RFC "which limit[ed him] to simple routine tasks in a low stress, low contact environment").

Here, the ALJ found that David had the RFC to:

> . . . perform simple, repetitive work-related tasks in a non-fast paced production setting (i.e. no assembly line type work), involving no interaction with the public as part of the job duties (face-to-face or otherwise) and only occasional interaction with supervisors and co-workers, but no team, tandem, or collaborative-type work; and he is able to make simple work-related decisions and adapt to simple changes in a routine work setting.

---

[4] Unskilled work is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *See* 20 C.F.R. §§ 404.1568(a); 416.968(a).

4

Docket Item 8 at 19. Those restrictions effectively limit David to unskilled work. *See, e.g.*, *Martinez v. Comm'r of Soc. Sec.*, 2017 WL 2633532, at *5, 7 (N.D.N.Y. June 15, 2017) (holding that where the RFC restricted the plaintiff to "simple, routine, and repetitive tasks in a low-stress job, defined as a job that had occasional changes in the work setting that required occasional decision making and occasional judgment," the "RFC determination for unskilled work [was] not inconsistent with moderate limitations in mental functioning"); *see also* 20 C.F.R. §§ 404.1568(a); 416.968(a).

In crafting the RFC, the ALJ gave "great weight" to Dr. McMahon-Tronetti's opinion, in part because Dr. McMahon-Tronetti was David's treating physician. Docket Item 8 at 24. Dr. McMahon-Tornetti determined that David was moderately limited in four categories: understanding and remembering instructions, carrying out instructions, maintaining attention/concentration, and appearing able to function in a work setting at a consistent pace. *Id.* at 319. Her handwritten notes added that "David struggles to maintain concentration and focus on tasks" but that "[h]e is able to follow instructions with much guidance." *Id.* She also indicated that there was no evidence of limitations in David's ability to make simple decisions, interact appropriately with others, maintain socially appropriate behavior without exhibiting behavior extremes, and maintain basic standards of personal hygiene. *Id.*

The ALJ observed that Dr. McMahon-Tronetti's opinion "provided generally vague quantifying of [David]'s functional abilities in a range of domains," but "supported no more than moderate restrictions, which is generally consistent with the residual

5

functional capacity above."[5]  *Id.*  The ALJ also noted that "Dr. McMahon-Tronetti did not select 'very limited' in any category," which would have been "more consistent with the finding of disability."  *Id.*  He also explicitly found that "Dr. McMahon-Tronetti's cited limitations [were] consistent with her own objective examinations with the claimant, which consistently fail[ed] to show substantial issues."  *Id.* (citing Docket Item 8 at 349, 352, 362, 366, 684-85, 687, 689-90, 692, 694).

David argues that the ALJ "found [Dr. McMahon-Tronetti's] opinion consistent with the evidence without knowing what [she] actually meant by the opinion."  Docket Item 9-1 at 11.  This Court disagrees.  While the opinion may not have been a model of clarity, Dr. McMahon-Tronetti's treatment notes provided additional details that illustrate and are consistent with the moderate limitations indicated on the assessment form.  *See* Docket Item 8 at 319.  For example, her treatment notes from May 3, 2016, state that David's "[a]ttention and concentration appear[ed] to be adequate," his "[g]eneral fund of knowledge [was] fair to good," his "[m]emory functions [were] intact," and "[h]e was oriented to place and date."  *Id.* at 362.  She also noted that his "[a]bility to abstract [was] somewhat impaired in the high range, [but] not severely so, and certainly not enough to cause any significant encumbrance"—in fact, "[i]t [had] improved."  *Id.*  And

---

[5] David also argues that "the ALJ made the conclusory and circular finding that the moderate limitations opined were consistent with his own previously-determined RFC."  Docket Item 9-1 at 10.  It is true that an "ALJ cannot support a decision regarding weight with a reference to an already-determined RFC."  *Mault v. Colvin*, 2017 WL 1100617, at *4 (W.D.N.Y. Mar. 24, 2017).  Here, however, the ALJ's explanation included more than enough support for giving Dr. McMahon-Tronetti's opinion "great weight."  *Cf. id.* ("[S]uch circular reasoning fails where the RFC finding is not supported by substantial evidence in the first place.").

although the treatment notes vary somewhat, they support an RFC limiting David to unskilled work. *See, e.g.*, *id.* at 349, 352, 362, 366, 684-85, 687, 689-90, 692, 694.

David also argues that the ALJ failed to explain how he incorporated the specific limitations from the opinions on which he relied into the RFC. Docket Item 9-1 at 9-10 (arguing, for example, that the RFC does "not account for limitations in maintaining attention and concentration), 12. But an ALJ is not required to explicitly address each limitation from each medical opinion in the RFC. *See Matta*, 508 F. App'x at 56 ("Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."); *see also Landers v. Colvin*, 2016 WL 1211283 at *4 (W.D.N.Y. Mar. 29, 2016) ("[A]n ALJ need not call out every moderate limitation by name, provided that the RFC appropriately reflects such limitations."). Instead, the ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that ' . . . a reviewing court . . . may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (third alteration in original) (quoting *Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir. 2004)). The ALJ provided such a bridge here—thoroughly explaining the weight assigned to each opinion and why the RFC accounted for the limitations in those opinions.

Indeed, as he should have done, the ALJ gave the most weight to the opinion of David's treating physician. An ALJ generally should give greater weight to the medical opinions of treating sources—such as physicians and psychologists who have "ongoing

treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments." *See* 20 C.F.R. § 404.1527(a)(2), (c)(2); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order). In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). And as he was required to do, the ALJ addressed the other opinions in the record as well. *See* § 404.1527(c) (requiring an ALJ to evaluate every medical opinion received based on examining relationship, treatment relationship, supportability, consistency, specialization, and any other relevant factor).

For example, the ALJ gave "partial weight" to the opinion of Andrea Spriggs, LMSW. Docket Item 8 at 24. LMSW Spriggs found that David was moderately limited in three categories— maintaining attention and concentration, maintaining socially appropriate behavior without exhibiting behavior extremes, and functioning in a work setting at a consistent pace—but was not limited in other categories. *Id.* at 635. She noted that David's symptoms might negatively impact his job performance depending on his ongoing treatment needs and that he might require additional treatment. *Id.* The ALJ noted that LMSW Spriggs's opinion "supported limitations consistent with Dr. McMahon-Tronetti['s]," and that "the consistency between both of these sources [sic] individual findings bolster the validity and accuracy of each of their individual assessments." *Id.* at 24. The ALJ also addressed LMSW Spriggs's concerns about future issues, explaining that the RFC "reasonably allow[s] for . . . reasonable

8

restrictions to minimize the potential for symptom exacerbations." *Id.* Indeed, the RFC includes limitations beyond those found by LMSW Spriggs. *See id.* at 19 (noting that David should have "no interaction with the public . . . and only occasional interaction with supervisors and co-workers, but no team, tandem, or collaborative-type work").

Likewise, the ALJ gave "partial weight" to the assessment of the consultative examiner, Christine Ransom, Ph.D. *Id.* at 24. Dr. Ransom found that David had "mild" limitations which would "not significantly interfere with [his] ability to function on a daily basis." *Id.* at 297. The ALJ noted that "despite [Dr. Ransom's] personal evaluation with [David] and [her] applicable specialty[,] . . . her assessment reflect[ed] only a snapshot in time . . . rather than a longitudinal perspective of the claimant's functional deficits." *Id.* at 24. For that reason, the ALJ noted that the RFC included additional limitations "in a full-time work setting." *Id.*

The ALJ gave "little weight" to the May 2016 opinion of the state examiner, "H. Tzetzo," M.D. *Id.* at 25. Dr. Tzetzo found that David's "psychiatric impairments [would] not affect his ability to perform work tasks, therefore, are found to be non severe [sic]." *Id.* at 86. But as the ALJ noted, records submitted after Dr. Tzetzo's evaluation supported "a finding that [David]'s conditions at least [met] the minimal threshold level for severity and result in some limitations." *Id.* at 25. Therefore, the ALJ concluded that Dr. Tzetzo's opinion understated David's limitations, and the ALJ included additional limitations in the RFC.

In sum, the ALJ appropriately discounted the opinions that did not account for all of David's limitations and crafted an RFC that incorporated the moderate limitations found by David's treating physician. *See id.* at 19, 23-25; *cf. Landers*, 2016 WL

9

1211283 at *4 ("The determination that [the p]laintiff is limited to 'simple, repetitive, and routine tasks' accounts for [his] limitations as to maintaining attention and concentration . . ."). He explained why periods of decompensation did not require further restrictions. *See* Docket Item 8 at 21 (acknowledging David's mental health hospitalizations while he was off his medication but noting that his condition improved significantly with medication compliance and that one hospitalization occurred "in the context of Suboxone abuse"); 25 (affording "partial weight" to the numerical mental health scores "provided throughout the record" because "taken longitudinally [they] reflect conditions that are severe, but not disabling when engaged in treatment compliance and sobriety"). He addressed and weighed all the medical evidence and opinions in a thoughtful and thorough manner. Given all that, this Court cannot second guess the ALJ's findings.

## **CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, and for the reasons stated above, David's motion for judgment on the pleadings, Docket Item 9, is DENIED, the Commissioner's cross motion for judgment on the pleadings is GRANTED, Docket Item 10, the complaint is DISMISSED, and the Clerk of the Court shall close the file.

SO ORDERED.

Dated: June 21, 2021
          Buffalo, New York

                                          /s/ Lawrence J. Vilardo
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE